

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 3:17-cr-202-J-39JBT
18 U.S.C. 371

ASHISH K. BAHL

# INFORMATION

The Acting United States Attorney charges:

## COUNT ONE

### A. Introduction

At all times material to this Information:

1. ASHISH K. BAHL (BAHL) was a resident of Atlanta, Georgia, who also owned a residence in Ponte Vedra. BAHL was a businessman who has held ownership interests in various financial technology business. In addition to his financial technology businesses, BAHL held a significant ownership interest in a company named Parador Partners LLC (Parador).

2. The Riverwatch at City Center Commercial Condominium Association, Inc. (Condominium Association) was the legal name of the condominium association for a twenty-three story commercial building located at 76 South Laura Street, Jacksonville, Florida ("the building"). The

building was owned and operated as a business condominium. Parador owned the largest percentage of office units in the building, as high as 73%, with the remainder owned by several other entities.

3. The Condominium Association contracted with an office management company in order to manage, operate, and maintain the building. The office management company was Riverwatch Management LLC (Riverwatch). In order to carry out its duties and responsibilities, Riverwatch collected monthly condominium dues from owners of the office units according to the owners' ownership percentage in the building. Additionally, as necessary, Riverwatch was authorized to issue special assessments to the building's owners for maintenance issues not included in the condominium Association's annual budget.

### B. The Conspiracy and its Objects

From in or about June 2012, and continuing thereafter through in or about March 2015, in Jacksonville, Florida, within the Middle District of Florida; Atlanta, Georgia; and elsewhere,

ASHISH BAHL,

the defendant herein, and at least one other individual, did knowingly and willfully combine, conspire, confederate and agree with each other to commit certain offenses, to wit:

2

1. execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, by utilizing the United States mail and private and commercial interstate carriers, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1341; and,

2. execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, by transmitting and causing to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, visual pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### C. Manner and Means of the Conspiracy

1. It was a part of the conspiracy that BAHL would defraud office condominium owners in the building by intentionally causing fraudulently inflated special assessment invoices to be issued to condominium owners for major expenses, including mold remediation and window seal replacement.

2. It was further a part of the conspiracy that BAHL would cause the collection of inflated special assessments from condominium owners for

special assessments, which were paid to Riverwatch using interstate or international electronic funds transfers (EFT) and the mail.

3.  It was further a part of the conspiracy that BAHL would enter into "side-agreements" with businessmen who had contracted to perform work related to the inflated special assessments, whereby the contractors would kick-back, through periodic payments, a significant portion of the money paid to the contractor based upon fraudulently inflated special assessment invoices.

4.  It was further a part of the conspiracy that BAHL would deposit or cause to be deposited kick-backed money, that is, a portion of the fraudulently invoiced special assessment which was paid by check from the contractor, into a business bank account owned by and controlled by BAHL.

5.  It was further a part of the conspiracy that BAHL would use the kick-back money from the contractors as his own funds.

6.  It was further a part of the conspiracy that BAHL and a co-conspirator knew that interstate wires and the mail would be used in connection with the submission of the fraudulent invoices to victim office condominium owners, as well as when communicating with contractor(s) retained to perform work on the building, and in connection with contractor(s) paying kick-backs to BAHL.

7. It was further part of the conspiracy that BAHL would fraudulently and illegally use Condominium Association funds held by Riverwatch to pay personal expenses, which were completely unrelated to any financial obligations of the Condominium Association.

## Overt Acts

1. In or about June 2012, BAHL caused an inflated invoice to be created by a contractor and sent to the Condominium Association; fraudulently representing that the cost of mold remediation in the building was $110,000.

2. In or about June 2012, in Jacksonville, Florida, BAHL caused members of the Condominium Association to pay a significantly inflated special assessment for mold remediation to Riverwatch.

3. In or about the end of July 2012, BAHL received a check, dated July 22, 2012, in the amount of $95,000, from the mold remediation contractor as a kick-back, which was deposited into a corporate account controlled by BAHL.

4. In or about late 2013 to the early part of 2014, BAHL caused an inflated invoice to be created by a contractor and sent to the Condominium Association, fraudulently representing that window seal repair for the building was $836,440.

5. Between in or about January 14, 2014 through in or about August 13, 2014, in Jacksonville, Florida, BAHL caused members of the Condominium Association to pay a significantly inflated special assessment for window seal repair to Riverwatch.

6. Between on or about January 24, 2014, through on or about August 22, 2014, at Jacksonville, Florida, BAHL received a series of five kick-back checks from the window seal contractor, totaling $345,000, which were all deposited into a corporate account controlled by BAHL.

7. On or about August 18, 2014, in Jacksonville, Florida, BAHL caused Riverwatch to issue a check in the amount of $7,150, to pay for personal home expenses, specifically, an air-conditioner, at ASHISH BAHL'S residence in the greater Atlanta, Georgia area.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE

1. The allegations contained in Count One of this Information are incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a conspiracy of the violation of 18 U.S.C. § 1343, in violation of 18 U.S.C. § 371, the defendant, ASHISH BAHL, shall

forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3. The property to be forfeited includes, but is not limited to, the sum of approximately $135,396.06, representing the amount of proceeds obtained as a result of the offense.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be

divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

        W. STEPHEN MULDROW
        Acting United States Attorney

By: _____
        Mark B. Devereaux
        Special Assistant
        United States Attorney

By: _____
        Jason P. Mehta
        Assistant United States Attorney

By: _____
        Frank Talbot
        Assistant United States Attorney
        Chief, Jacksonville Division